STATE of Arkansas,
Arkansas Department of Correction *v.*
Jackie Lee STAPLETON

01-523                                              51 S.W.3d 862

Supreme Court of Arkansas
Opinion delivered July 9, 2001

*Mark Pryor*, Att'y Gen., by: *Joseph V. Svoboda*, Ass't Att'y Gen., for appellant.

*William R. Simpson, Jr.*, Public Defender; *Kent C. Krause*, Deputy Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellee.

ROBERT L. BROWN, Justice. This matter involves an appeal by the State from an order granting appellee Jackie Lee Stapleton's petition for a writ of *habeas corpus*. The facts leading up to this order are these. On April 29, 1987, Stapleton pled guilty to two counts of aggravated robbery, two counts of theft of property, and one count of aggravated assault.[1]

At a hearing held on June 24, 1987, before the Pulaski County Circuit Court, the following colloquy took place:

> THE COURT: I'm going to sentence you to the negotiated plea that you negotiated. I don't know what it is but they're going to tell me and I am going to do that. As I understand it, that sentence is going to be served concurrently with the time you're going to get in Tennessee. And we're going to immediately release you to the Tennessee authorities [a]nd they're going to hold you until they sentence you and then our sentence will run concurrent to that.

---

[1] The written Plea Statement does not include the two counts for theft, although Stapleton admitted to the circuit court that he was also pleading guilty to the theft charges.

....

DEFENSE COUNSEL: He's ready to go.

THE COURT: Okay. He's going to get life over there, is he?

DEFENSE COUNSEL: At least, yes, sir.

THE COURT: At least. If for some reason it doesn't happen, we're going to bring him back here and let him serve this sentence, whatever it is.

DEFENSE COUNSEL: I think Mr. Douglass [the prosecutor] and I are both ...

THE COURT: Satisfied that it's going to happen and Jackie's satisfied it's going to happen, too?

DEFENSE COUNSEL: Yes, sir. And Mr. Stapleton's well aware of what's going on.

THE COURT: What's the recommendation, Mr. Prosecutor?

PROSECUTOR: Your Honor, on count one, aggravated robbery, the state would recommend life. On count two, aggravated robbery, the state would recommend life imprisonment, to be served concurrent to each other. On the remaining counts, counts three, four and five, the state would recommend six years concurrent to each other and concurrent to counts one and two.

DEFENSE COUNSEL: And for the record also, your Honor, it's our understanding that this will be concurrent to time to be received in Tennessee.

....

THE COURT: Do you know of any reason why I shouldn't sentence you at this time?

STAPLETON: No, sir.

THE COURT: State of Arkansas versus Jackie Stapleton, 87-164, it is the judgment and sentence of this court that you be taken by the sheriff of Pulaski County and delivered to the Department of Correction to serve at hard labor for a period of life for count

one and life for count two. Counts three, four and five, it is the judgment and sentence of this court that you be sentenced to a term of six years in the Department of Correction. These sentences are to be run concurrently, each with the ... all with each other and they are to be concurrent to the sentence that you are to receive in the State of Tennessee and they are to be served in the State of Tennessee Department of Correction. ... It is the intention of the court to grant your request that you be sentenced to these terms and that you be allowed to serve them in the Department of Correction of the state of Tennessee concurrent with the sentence that you receive there. Good luck to you.

On June 25, 1987, a judgment and commitment order was entered wherein Stapleton was sentenced to life imprisonment at "hard labor" for the counts of aggravated robbery, six years for theft of property, and six years for first-degree assault. The judgment and commitment order stated that the sheriff is directed to transport Stapleton to the Arkansas Department of Correction to commence his sentence. Under "Explanatory Notes," the judgment read that the sentence would be "current [ sic] with time in Tennessee to be served in Tennessee."

Thereafter, Stapleton was transferred to representatives of the State of Tennessee for purposes of resolving the criminal charges brought against him in that state. On January 12, 1988, a judgment was entered in the criminal court of Sullivan County, Tennessee, which stated that Stapleton had been found guilty of second-degree burglary in two cases, grand larceny, and possession of burglary tools. He was sentenced to twenty years on each burglary conviction, six years for grand larceny, and five years for possession of burglary tools. The sentences were to be served concurrently in the Tennessee Department of Correction and concurrently with the Arkansas sentences. The Tennessee judgment provided that Stapleton would have to serve thirty percent of his sentence before he would be eligible for release.

On January 17, 1992, Stapleton was released on parole by the Tennessee Department of Correction to the Knoxville, Tennessee parole office. Parole was to be continued, according to Stapleton, until the year 2014. On January 13, 1998, Stapleton was arrested in Tennessee and later extradited back to Arkansas. At the time he was arrested in Tennessee, he had married, received custody of his four-year-old granddaughter, and was working as a truck driver for Goodwill Industries. Stapleton was denied a hearing by the Pulaski

County Circuit Court and was committed to the Arkansas Department of Correction to serve his life sentence. An order by the circuit court was entered to that effect on March 30, 1998. Stapleton filed a notice of appeal from the circuit court's order, but his record was rejected by the Clerk of the Supreme Court because it did not contain a notice of appeal. No additional action was taken by Stapleton to perfect his appeal.

On January 12, 2000, Stapleton filed a petition for writ of *habeas corpus* with the Lincoln County Circuit Court. In that petition, he contended that in 1987, the Pulaski County Circuit Court "waived jurisdiction or otherwise implicitly pardoned" him when it authorized that he serve his Arkansas sentence in Tennessee and that the circuit court in 1998 lacked jurisdiction to modify the 1987 judgment and recommit him to the Arkansas Department of Correction. The State responded to the petition and argued that the initial commitment to the Arkansas Department of Correction in 1987 was not invalid on its face and that the circuit court did not lack subject-matter jurisdiction to enter the 1987 judgment and commitment order.

A hearing was held on the petition on September 7, 2000, and Stapleton testified in support of his petition. On February 27, 2001, the Lincoln County Circuit Court entered its order granting *habeas corpus* relief to Stapleton. In that order, the court found and concluded as follows:

> At the time Petitioner Stapleton was arrested in Tennessee and extradited back to Arkansas, he was on parole from the Tennessee Department of Correction and thereby subject to the supervision of the Tennessee Department of Correction. This Court specifically finds that until such time as he is no longer under the supervision of the Tennessee Department of Correction, Petitioner Stapleton's Arkansas sentence should be served concurrently with his Tennessee sentences and supervised by the Tennessee Department of Correction. That this Court does not reach, as it is not before the Court, what will happen when Petitioner Stapleton completes his Tennessee sentence and is no longer under supervision of the Tennessee Department of Correction. That to the extent necessary to effect this order, the Respondent is hereby directed to disregard the order of the Pulaski County Circuit Court, First Division, dated March 30, 1998.

On May 9, 2001, the State filed a motion for stay of the order granting *habeas corpus* relief to Stapleton and expedited review of the

matter. This court granted the stay and set an expedited briefing schedule. *See State v. Stapleton*, 345 Ark. 47, 43 S.W.3d 157 (2001) (*per curiam*).

In its appeal, the State contends that *habeas corpus* relief is not available when a petitioner is merely questioning where he is to be incarcerated. Rather, the remedy, according to the State, is limited to the question of whether a person should be incarcerated at all. The State further maintains that no one disputes the validity of the 1987 Arkansas judgment or the jurisdiction of the circuit court to enter that order.

Stapleton, on the other hand, argues that the Pulaski County Circuit Court lost jurisdiction to modify the 1987 Arkansas sentence after it was placed into execution in Tennessee. Under his theory, the Pulaski County Circuit Court sentenced him to serve his life sentence in Tennessee and, thus, waived subject-matter jurisdiction over him to modify that sentence. Thus, he contends, the Pulaski County Circuit Court was without jurisdiction to commit him to the Arkansas Department of Correction in 1998 so long as the Tennessee sentence, albeit parole rather than incarceration, was still in effect. This action by the Pulaski County Circuit Court, he claims, constituted a modification of the 1987 judgment and resulted in his illegal incarceration in Arkansas.

█ *Habeas corpus* is a vital privilege that is protected by the Arkansas Constitution. Ark. Const. Art 2, § 11. A writ of *habeas corpus* will be granted forthwith upon a showing by affidavit or other evidence that there is probable cause to believe a person is being detained without lawful authority. Ark. Code Ann. § 16-112-103 (a) (1987). This court has made it clear that a writ of *habeas corpus* will issue when a commitment is invalid on its face or when the sentencing court lacked subject-matter jurisdiction to enter or modify the sentence. *Renshaw v. Norris*, 337 Ark. 494, 989 S.W.2d 515 (1999); *Sawyer v. State*, 327 Ark. 421, 938 S.W.2d 843 (1997).

As both parties agree, our beginning focus must be on the 1987 judgment and commitment order entered by the Pulaski County Circuit Court. Neither party contends that that judgment was invalid. The salient parts of that judgment are:

- Stapleton received several sentences on several convictions, including a life sentence.

- His sentence was described as "hard labor" and the sheriff was directed to transport him to the custody of the Arkansas Department of Correction.

- The Arkansas sentences were to run concurrently.

- Under "Explanatory Notes," the judgment said the Arkansas sentences would run concurrently with the Tennessee sentences.

█ As an initial matter, we disagree with Stapleton that the Pulaski County Circuit Court had the authority to determine where Stapleton would serve his Arkansas sentence. The 1987 order was a valid judgment and commitment order for incarceration in the Arkansas Department of Correction. Furthermore, a circuit court has no authority to order where a sentence will be served. That authority rests solely with the executive branch of government and particularly in Arkansas with the Arkansas Department of Correction. *See* Ark. Code Ann. § 5-4-402(a) (Supp. 1999); Ark. Code Ann. § 12-27-113(a)(1) (Repl. 1999). In short, it was the decision of the Arkansas Department of Correction, and only the Department of Correction, as to where Stapleton's sentence would be served. An "explanatory note" in the judgment that the life sentence be served in Tennessee does not diminish that fact. We do note, however, that it would be nonsensical to sentence Stapleton to life in prison for Arkansas crimes and then order, in effect, that that sentence be served concurrently with a twenty-year sentence in Tennessee. Of course the circuit court in 1987 did not know what the Tennessee judgment would be, but nonetheless it would be an absurd interpretation of the 1987 judgment to limit its effect to a term of twenty years.

█ In short, the transfer of Stapleton to Tennessee for service of his Arkansas life sentence concurrently with his Tennessee sentences did not void that life sentence. Nor did it postpone Arkansas's ability to have its life sentence of "hard labor" carried out when Stapleton was placed on parole in Tennessee. In support of our conclusion, we turn to our decision in *George v. State*, 285 Ark. 84, 685 S.W.2d 141 (1985). In *George*, the *habeas corpus* petitioner had been convicted of burglary in Texas and placed on probation. He returned to Arkansas and was convicted of second-degree murder. While on appeal bond, the Desha County Circuit Court turned the petitioner over to the Texas authorities, and in Texas, his probation on the burglary conviction was revoked. He was sentenced to five years in Texas. He was paroled in Texas, and

he returned to Arkansas where he was arrested and sent to the Arkansas Department of Correction to serve time on the second-degree murder conviction.

Petitioner filed a *habeas corpus* petition and claimed that the Desha County Circuit Court had lost jurisdiction to commit him to the Arkansas Department of Correction because that court had released him to Texas. This court disagreed that the commitment was illegal. We said:

> While one effect of the Arkansas commitment may be to place [petitioner] in violation of his Texas parole obligation, that is not a consideration in determining whether the Desha County Circuit Court had the power to commit him.

285 Ark. at 87, 685 S.W.2d at 143. We held that the petitioner was not entitled to a writ.

■ The same holds true in the case at bar. The Pulaski County Circuit Court never relinquished its power to require Stapleton to serve his life sentence. Nor was that court's commitment of Stapleton in 1998 to the Arkansas Department of Correction a modification of the original 1987 judgment. The circuit court had the power to require Stapleton to serve his Arkansas sentence regardless of his parole in Tennessee. Indeed, the fact that Tennessee placed Stapleton on parole did not undercut the Pulaski County Circuit Court's authority any more than the Texas parole undercut the authority of the Desha County Circuit Court to commit the petitioner in the *George* case.

The order of the Lincoln County Circuit Court granting a writ of *habeas corpus* is reversed and this matter is remanded for entry of an order consistent with this opinion.